IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BENNIE BYRD, III, as Personal
Representative of the Estate of BENNIE
BYRD, JR.,

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

CASE NO.: 12-cv-12174
HON. PATRICK J. DUGGAN

_____

### OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Pro se Plaintiff Bennie Byrd, III, filed the instant action as Personal Representative of the Estate of Bennie Byrd, Jr. ("Decedent") on May 16, 2012, alleging that the Allen Park Veterans Affairs Medical Center and the John D. Dingell Veterans Affairs Medical Center (the "Defendants") engaged in a course of negligent conduct amounting to medical malpractice that caused Decedent's death.  Because both medical centers are federal government entities, Plaintiff sues the United States (the "Government") claiming that its employees or agents failed to treat Decedent's ailments at least in part so they could conduct covert medical research on the unwitting subject.

Presently before the Court is the Government's motion to dismiss for lack of subject-matter jurisdiction, filed pursuant to Federal Rule of Civil Procedure 12(b)(1) on July 11, 2012.  The Government argues that Plaintiff's failure to adhere to the statute of limitations set forth in the Federal Tort Claims Act ("FTCA"), specifically located at 28 U.S.C. § 2401(b), deprives the Court of jurisdiction.  Plaintiff's response to the

1

Government's motion to dismiss, filed on July 26, 2012, contends that any statute of limitations deficiency is excused by virtue of Defendants' fraudulent concealment of the medical research generally and Decedent's medical records more specifically. Defendants filed a reply brief on August 6, 2012. The Court concludes that oral argument will not aid in its adjudication of the matter and therefore is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court concludes that it lacks subject-matter jurisdiction over this action and that Plaintiff's Complaint must be dismissed.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

From early 1987 through his death on June 24, 2006, Decedent sought treatment for various medical conditions at the Allen Park Veterans Affairs Medical Center and the John D. Dingell Veterans Affairs Medical Center, both of which are federal facilities located in southeast Michigan. (Compl. ¶¶ 12, 34.) As personal representative of Decedent's estate, Plaintiff attempted to collect Decedent's medical records, but noticed that "they were incomplete" and "missing pertinent information." (Pl.'s Br. in Resp., at 2.) Plaintiff attempted to retrieve the missing records, ultimately leading him to Rebecca Croft in the Research Department at the John D. Dingell Veterans Affairs Medical Center on August 12, 2009. (*Id.* at 3.) When Plaintiff inquired about Decedent's records, Croft indicated "she did not think he was a participant in a research program" but said she would look into it and if nothing was found, she would call Plaintiff. (*Id.*) Plaintiff never heard from Croft nor did he receive any additional records from her. (*Id.*)

2

Faulting the care Decedent received at the aforementioned facilities for his death, Plaintiff filed the first of two administrative tort claims with the Department of Veterans Affairs Office of Regional Counsel in Detroit, Michigan on August 24, 2007. (*Id.*, Ex. 1.) This claim alleged that negligent diagnosis and treatment of Decedent resulted in his death. (*Id.*) On June 24, 2009, the Detroit Regional Counsel Office denied the claims. (*Id.*) The denial letter informed Plaintiff that he could either file a request for reconsideration or file a lawsuit in a district court within six months of the date of the letter. (*Id.*) Plaintiff elected to pursue the first option, filing a timely request for reconsideration with the Veterans Affairs General Counsel in Washington, DC. (*Id.*, Ex. 2.) By letter dated March 4, 2011, the Veterans Affairs General Counsel denied the claim indicating that "[t]his denial is the last action we will take on this tort claim. If you wish to pursue the claim further, you may file suit in Federal District Court within 6 months from the date at the top of this letter." (*Id.*) Plaintiff did not file suit within six months of this denial letter.

Instead of filing in federal court, Plaintiff filed a second administrative claim on June 25, 2011. (*Id.*, Ex. 3.) This claim also alleged that negligent treatment of Decedent caused his death. (*Id.*) The Detroit Regional Counsel Office again denied the claim, this time on the grounds that the claim was untimely pursuant to the FTCA. (*Id.*) On November 1, 2011, Plaintiff requested reconsideration with the Office of General Counsel in Washington, DC, which they promptly denied on December 5, 2011. (*Id.*, Ex. 4.) The December 5, 2011 letter indicated that although Plaintiff could file suit in a district court within six months, if Plaintiff chose to do so, "the United States will assert

3

that the litigation is untimely, as it should have been brought pursuant to the previous denial as set forth in the attached letter." (*Id.*)  On May 16, 2012, Plaintiff filed this lawsuit.  (Compl.)

## II.      RULE 12(b)(1) STANDARD OF REVIEW

Motions to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) fall into two categories: facial attacks and factual attacks.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  The Sixth Circuit has described these two categories of motions:

> A *facial* attack is a challenge to the sufficiency of the pleading itself.  On such motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party . . . . A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction.  On such motion, no presumptive truthfulness applies to the factual allegations . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

*Id*. (internal citations omitted) (emphasis in original).  A plaintiff bears the is burden of demonstrating that a court has jurisdiction over the subject matter.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F3.d 1125, 1134 (6th Cir. 1986) (citation omitted).

## III.      ANALYSIS

### A.      Parties' Arguments

Defendants raise a facial challenge to the existence of subject-matter jurisdiction, contending that Plaintiff's failure to comply with either of the FTCA's administrative requirements precludes the Court from entertaining this action.  (*See* Def.'s Br. in

4

Support, at 1, 5.)  Plaintiff, on the other hand, argues that the FTCA provisions have been

satisfied because the claim did not accrue until he became aware of the facts giving rise

to the cause of action, which, according to Plaintiff, occurred in August of 2009, when he

requested Decedent's medical files from the Research Department.  (Pl.'s Br. in Resp., at

7.)

**B.     The FTCA's Procedural Requirements**

As sovereign, the United States is immune from suit unless it clearly consents to

be sued, thus waiving its immunity.  *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.

Ct. 767, 770-71 (1941) (citations omitted).  The FTCA constitutes one such waiver,

providing that the United States is liable for money damages for "personal injury or death

caused by the negligent or wrongful act or omission of any employee of the Government

while acting within the scope of his office or employment . . . ."  28 U.S.C. § 1346(b).

This waiver of immunity, however, is not without limits.  The FTCA provision applicable

to the instant case places two conditions upon the waiver, providing that:

> A tort claim against the United States shall be forever barred
> unless [1] it is presented in writing to the appropriate Federal
> agency within two years after such claim accrues or unless [2]
> action is begun within six months after the date of mailing, by
> certified or registered mail, of notice of final denial of the
> claim by the agency to which it was presented.

28 U.S.C. § 2401(b).  The FTCA thus represents Congress' consent to a limited waiver of

immunity and "the terms of [this congressional] consent [therefore] define the extent of

the court's jurisdiction."  *Humphrey v. United States AG Office*, 279 F. App'x 328, 332

(6th Cir. May 15, 2008) (unpublished) (Griffin, J.) (quoting *Franklin Sav. Corp. v. United*

5

*States*, 385 F.3d 1279, 1287 (10th Cir. 2004)).  "The applicable statute of limitations is a term of consent[]" and a plaintiff's failure to satisfy the limitations period "deprives the court of jurisdiction to entertain the action." *Id.* (quoting *Franklin Sav. Corp*, 385 F.3d at 1287).

Federal law determines when a FTCA claim for negligence or medical malpractice accrues. *Chomic v. United States*, 377 F.3d 607, 610 (6th Cir. 2004).  The Supreme Court has held that a claim accrues under the FTCA when the plaintiff knows of both the existence and cause of his injury – not at some later time when the plaintiff knows that the acts inflicting the injury may constitute negligence or medical malpractice.  *United States v. Kubrick*, 444 U.S. 111, 121-23, 100 S. Ct. 352, 359-60 (1979).

"Importantly, while federal law dictates that a cause of action accrues when a plaintiff knows the existence and cause of injury, state law determines the nature of the underlying cause of action itself, which in turn impacts when the claim accrues." *Bramberger v. Toledo Hosp.*, No. 3:10 CV 1626, 2012 U.S. Dist. LEXIS 136486, at *11 (N.D. Ohio Sept. 24, 2012) (unpublished) (Katz, J.) (citing *Chomic*, 377 F.3d at 611).  In Michigan, a wrongful death action is derivative in nature, meaning that "a plaintiff estate representative stands in the shoes of the decedent." *Id.*, at *11-12 (citing Mich. Comp. Laws § 600.2922) (additional citations omitted).  In *Chomic*, the Sixth Circuit held that where a state law provides for a derivative, rather than independent, cause of action for wrongful death, and where the injury and its cause are known prior to death, the cause of action accrues on the date of injury and not on the date of death. *Id.*, at *12 (citing *Chomic*, 377 F.3d at 610-12).  "In other words, a derivative wrongful death action can

6

accrue *before* death if the injury and cause are known prior to death." *Id.* (citing *Chomic*,

377 F.3d at 610-12). If the injury and cause are unknown prior to death, however, a

medical malpractice claim may accrue at death, *Garrett v. United States*, 640 F.2d 24, 26

(6th Cir. 1981) (per curiam), or even thereafter if an injury and its cause are not known

by the claimant until a later date, *Bradley v. United States*, No. 12-11648, 2012 U.S. Dist.

LEXIS 142432, at \*15-16 (E.D. Mich. Oct. 2, 2012) (unpublished) (Cohn, J.) (finding a

post-death accrual date because a reasonable person would not know that decedent's

injury was attributable to a government omission until the pertinent medical records were

released).

  Irrespective of when a claim accrues, the FTCA clearly requires a plaintiff to file

an administrative claim within two years of accrual or file suit in federal court within six

months of receiving notice of final denial by the relevant agency; if either condition is not

met, the claim "shall be forever barred." 28 U.S.C. § 2401(b).

## C.   Plaintiff's First Administrative Claim

  Assuming the Government is correct in contending that the claim in this case

accrued on Decedent's death on June 24, 2006,[1] Plaintiff timely filed his first

administrative claim with the Veterans Administration on August 24, 2007. (Def.'s Br.

in Support, at 1, 6; Compl., Ex. 1.) This claim was denied on June 24, 2009. (Compl.,

Ex. 1.) Plaintiff sought reconsideration and by letter dated March 4, 2011, the Veterans

Affairs General Counsel – the entity reviewing the initial denial – again denied the claim,

---

[1] Even if the claim accrued earlier under the rationale of *Chomic*, the two-year limitations period for filing a claim expired prior to Plaintiff's filing of the second administrative claim on June 25, 2011.

7

indicating that "[t]his denial is the last action we will take on this tort claim.  If you wish to pursue the claim further, you may file suit in Federal District Court within 6 months from the date at the top of this letter."  (*Id.*, Ex. 2.)  Plaintiff had until September 4, 2011, to file a lawsuit based on this denial.  However, Plaintiff did not file suit in this Court until May 16, 2012, and therefore, did not file suit within six months of the final denial letter as required by 28 U.S.C. § 2401(b).  Failure to comply with this deadline deprives the Court of subject-matter jurisdiction as the FTCA indicates that noncompliance renders a tort claim against the United States "forever barred."  28 U.S.C. § 2401(b); *see also Humphrey*, 279 F. App'x at 332 ("The requirement that a claim pursuant to the FTCA be commenced within six months of an administrative denial is a jurisdictional prerequisite to suit and a failure to comply warrants dismissal on the merits." (citations omitted)).

**D.     Plaintiff's Second Administrative Claim**

Plaintiff filed a second administrative claim on June 25, 2011, roughly five years after Decedent's death but two-and-a-half months before the time to file suit in connection with the first claim expired on September 4, 2011.  (Compl., Ex. 3.)  Because the Government believes that the claim accrued on June 24, 2006, it argues the second claim should be barred as untimely because more than two years elapsed before filing.  (Def.'s Br. in Support, at 7.)  Plaintiff, on the other hand, argues that the claim did not accrue on the date of death because Defendants fraudulently concealed Decedent's medical records so as to avoid calling attention to the secret medical research.  (Pl.'s Br.

in Resp., at 7.)  This concealment, Plaintiff argues, is grounds for equitable tolling of the statutory period.  (*Id.*)  Plaintiff's position, however, lacks merit.

Although courts will equitably toll a statute of limitations when "defendants [] fraudulently conceal their wrongdoing and prevent a plaintiff from filing suit during the limitations period[,]" *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 910 (6th Cir. 2010) (citations omitted), Plaintiff has not discharged his burden of proving an entitlement to it, *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010).  After submitting that the statute of limitations should be tolled on the ground of fraudulent concealment, Plaintiff explains that the limitations period in such situations does not begin to run until Plaintiff begins "to inquire, seek information pertaining to the fraud."  (Pl.'s Br. in Resp., at 7.) Plaintiff suggests he began seeking information regarding the fraud on August 12, 2009, when he met with Rebecca Croft in the Research Department to inquire about Decedent's medical records and never received a response.  (*Id.*)  Thus, according to Plaintiff, the June 25, 2011 claim was timely as it occurred within two years of his visit with Croft. Extending this further, Plaintiff argues that this Court has jurisdiction over this action because he filed this lawsuit within six months of the December 5, 2011 denial of the timely-filed June claim.  (*Id.* at 8.)  The Court, however, rejects Plaintiff's attempt to redefine the relevant accrual date.

The fraudulent concealment doctrine triggers three questions in this case: (1) Did Defendants actively conceal wrongful conduct from Plaintiff? (2) Did that concealment prevent Plaintiff from discovering Defendants' wrongdoing during the limitations period? and (3) Did Plaintiff "exercise[] diligence in trying" to uncover Defendants' conduct?

9

*Ruth*, 604 F.3d at 910.  In the absence of affirmative responses to these questions,

Plaintiff's case must be dismissed for want of subject-matter jurisdiction.

1.      *Did Defendants actively conceal wrongful conduct from Plaintiff?*

Beyond Plaintiff's assertions of a nefarious plot to conduct secret research on

Decedent, the answer appears to be no, the Defendant's did not actively conceal wrongful

conduct from Plaintiff.  The only event Plaintiff alleges occurring between filing the first

and second claim is his visit to the Research Department on August 12, 2009.  (Pl.'s Br.

in Resp., at 7.)  Given that no records were ever produced by the Research Department,

Plaintiff cannot explain how this event constitutes the accrual date, which is the date on

which the plaintiff knows of both the existence and cause of the underlying injury.

*Kubrick*, 444 U.S. at 121-23, 100 S. Ct. at 359-60; *cf. Harrison v. United States*, 708 F.2d

1023, 1028 (5th Cir. 1983) (tolling limitations period to date plaintiff received medical

records because, despite plaintiff's earlier suspicions or beliefs regarding the cause of

injury, the records put her on notice that injuries were caused by "a slip in the

procedures" at a medical facility).  Moreover, beyond Plaintiff's threadbare assertions,

there is no evidence that the failure of the Research Department to produce documents

grew out of a desire to conceal anything.  In fact, there is no evidence that there even was

anything to conceal.

2.      *Did that concealment prevent Plaintiff from discovering Defendants'*
        *wrongdoing during the limitations period?*

Assuming, for the sake of argument, that Defendants did actively conceal the

medical records, Plaintiff fails to explain how this concealment prevented him from

10

discovering the alleged wrongdoing.  Plaintiff acknowledges that the reconsideration filed in response to the denial of the first administrative claim "asserted undisclosed research[.]"  (Pl.'s Br. in Resp., at 8 ("Although the reconsideration filed on September 29, 2009 asserted undisclosed research, the administrative claim/SF95 Form failed to allege Lack of Informed Consent, Failure to Inform, Failure to Refer, Negligent Supervision of a Research Program, Gross Negligent Research Impropriety and Fraud . . . .").)  Given Plaintiff's admission that the first (and timely-filed) administrative claim contained allegations pertaining to undisclosed medical research, the Court fails to see how the Plaintiff now argues that Defendants concealed their wrongdoing so as to deprive him of an opportunity to file suit within the limitations period.  This is particularly true in light of the fact that Plaintiff's visit to the Research Department occurred before the final denial letter was issued in connection with the first claim.

*3.*     ***Did Plaintiff "exercise[] diligence in trying" to uncover Defendants' conduct?***

It does appear that Plaintiff exercised diligence with respect to obtaining Decedent's medical records but this diligence occurred prior to the running of the statute of limitations on the first administrative claim.  (Pl.'s Br. in Resp., at 2.)  Moreover, Plaintiff alleged undisclosed medical research during the pendency of the first claim which demonstrates that he had uncovered enough information relating to Defendants' alleged conduct prior to filing the second claim.

**IV.    CONCLUSION AND ORDER**

Plaintiff's attempt to adjust the limitations period by arguing for application of equitable tolling lacks merit.  To the extent this case is based on the first administrative

11

claim, it is untimely because it was not filed within six months of the final denial letter. To the extent this case is based on the second claim, it is untimely because it was not filed within two years of the claim's accrual date. Plaintiff has failed to exhaust the remedies prescribed by Congress. As such, the instant action does not satisfy the prerequisites to suit delineated in the FTCA and this Court is without jurisdiction.

Accordingly, the Government's motion to dismiss for lack of subject-matter jurisdiction is **GRANTED** and Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

Dated:	October 30, 2012                                      s/PATRICK J. DUGGAN
                                                                       UNITED STATES DISTRICT JUDGE


Copies to:

**Bennie Byrd, III**
1400 West Grand Blvd.
Detroit, MI 48208
313-361-1424
PRO SE

**Theresa M. Urbanic, A.U.S.A.**